hPETERS, J.
dissenting.
I respectfully disagree with the majority’s affirmation of the trial court judgment. Unlike the majority, I find the evidence presented by the plaintiff falls woefully short of proof by a preponderance.
While disagreeing with the majority’s result, I do agree that the procedural posture of this litigation is less than satisfactory, and there is no clear explanation for the convoluted nature of the pleadings. However, as noted by the majority, the parties seem to agree concerning the status of the litigants on appeal, and, therefore, I also interpret this litigation to be between Richard Winn and Industrial Crane Rental, Inc. (hereinafter referred to as Industrial Crane).
It is undisputed that Mr. Winn sustained injury when the ball of the crane hit him in the back of the head, and all of the evidence concerning how the accident occurred consisted of the testimony of Mr. Winn and Mr. Gibson. My view of this testimony is that it proved nothing more than an accident occurred.
In his petition, Mr. Winn alleged that the crane was defective because it lacked “sehwinns” (referred to as “shims” at trial) and that, had the crane contained the “sehwinns,” the ball would not have swung backwards. However, in his testimony, Mr. Winn only offered a description of shims. He did not testify that the crane did | {.not contain shims or even that it should have contained shims. In fact, his only testimony concerning the workings of the crane was as follows:
Q Tell us, if you can, what you noticed about this crane. Was it working right or not?
A No sir, it was not working right.
Q And why wasn’t it working, why was it not working right? What was the problem?
A Well, the swing, when the operator swings it over — meaning the boom to move left to right — it should move, like glide, then come to a stop when he lets go. This one just keeps traveling and when it stops, it jerks and makes the ball swing.
*827 Mr. Gibson’s testimony was of little use in establishing the cause of the accident as well Mr. Gibson’s explanation was that the accident was caused by “a malfunction in the swing motor.” This combined testimony leaves us with nothing more than a generalization of what might have caused the accident, not what did cause the accident.
I further note that the majority concluded from the record that Mr. Winn’s complaints to the job secretary and superintendent concerning the mechanical operation of the crane were made on the day of accident. While I did not interpret the evidence in that manner as it was unclear to me exactly when the complaint occurred, even assuming that it did occur at that time, I find it strange that the plaintiff would continue to use the crane with such an obvious mechanical defect. Further, the majority asserts that in response to this conversation “[t]he superintendent telephoned [Industrial Crane] to have them remedy the crane’s apparent mechanical problem.” I disagree with this interpretation of the record. Mr. Winn testified only that he complained to the job secretary and superintendent and that the job secretary telephoned “the rental place” while he was present. At this point, counsel for ^Industrial Crane objected, asserting that reference to the telephone call by the job secretary constituted hearsay. The trial court concluded that the testimony was admissible to establish that a telephone call was made, but not to prove that Industrial Crane was the party called. Therefore, there is no evidence that Industrial Crane was ever notified of the asserted defect.
I agree with the majority that the plaintiffs burden is governed by La.Civ.Code art. 2317,[1] and I agree with the jurisprudence cited by the majority in support of this assertion. Most of all, I agree with the majority’s recognition that the fact an accident occurs does not establish a presumption of a defect. Prudhomme v. City of Iowa, 99-1386 (La.App. 3 Cir. 2/9/00); 758 So.2d 275.
Accepting that the boom had “play” in it and that the ball continued to swing when the boom came to a stop, this evidence alone is insufficient to show that the crane was defective. Essentially, the testimony shows that the crane did not function as Mr. Winn and Mr. Gibson thought it should have, not that these conditions constituted an unreasonable risk of harm. Neither Mr. Winn nor Mr. Gibson professed to be an expert concerning crane operations, although Mr. Winn suggested he had “some knowledge” of the workings of cranes and Mr. Gibson testified that he had operated numerous cranes and had personal knowledge of the workings of the crane in question. Their conclusory statements do not provide a sufficient basis for finding a defect. The evidence does not point to a defect as the only reasonable explanation for the occurrence of the accident nor does it tend to make improbable other causes. This is simply not the type of accident from which a defect can be | inferred solely by the fact of the occurrence of the accident, and there is not enough evidence to make out the claim. In fact, the accident could have occurred through operator error, or through Mr. Winn’s own action in standing too close to the crane.
I do not mean to say that in this case Mr. Winn’s attempt to establish the existence of a defect required expert testimony, although such testimony would have been helpful. However, there was additional testimony available in the form of the job secretary as well as the individual making the repairs to the crane. Without additional evidence, I cannot say that Mr. *828 Winn met his burden of proof, and I would reverse the trial court’s judgment.

. On appeal, both Industrial Crane and Winn analyze the liability issue under La.Civ.Code arts. 2317 and 2317.1. However, La.Civ. Code art. 2317.1 was added by Acts 1996, 1st Ex.Sess., No. 1, § 1, after Winn’s cause of action arose. I find La.Civ.Code art. 2317.1 makes substantive changes and is not retroactive.